J-S58007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL LASHAWN MCCARY | : | |
| | : | |
| Appellant | : | No. 101 WDA 2019 |

Appeal from the PCRA Order Entered December 20, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0003770-2008

BEFORE: PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED JANUARY 03, 2020**

Michael Lashawn McCary appeals from the December 20, 2018, order entered in the Allegheny County Court of Common Pleas, which dismissed his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. McCary seeks relief from a term of life imprisonment, imposed on April 20, 2009, after the trial court found him guilty of first-degree murder[1] in the stabbing death of Kenneth Waller ("the victim"). On appeal, he claims trial counsel was ineffective by failing to investigate McCary's psychiatric history, procure copies of his medical records, obtain an opinion from an expert in the field of forensic psychiatry, and present a diminished capacity defense at trial. Based on the following, we affirm.

---

[1] 18 Pa.C.S.A. § 2502(a).

The underlying facts are not pertinent to this appeal; therefore, we need not recite them in detail herein. We briefly note that, on May 27, 2005, McCary approached to the victim and another individual walking down the street on Penn Avenue, Pittsburgh, Pennsylvania. An argument ensued and McCary stabbed the victim in the neck.[2] The other individual identified McCary as the perpetrator.

Pertinent to this appeal, McCary had twice been committed to Western Psychiatric Institute and Clinic ("WPIC"), both of which occurred within one month of the incident at issue.[3] Trial counsel requested the records three days before trial began on January 15, 2009, but he did not receive the documents until January 20, 2009. One day later, which was the last day of the bench trial, the court found McCary guilty of first-degree murder. The court then sentenced McCary to the mandatory term of life imprisonment without the possibility of parole. This Court affirmed his judgment of sentence on November 21, 2011,[4] and the Pennsylvania Supreme Court denied his petition

---

[2] The victim succumbed to his injuries on December 22, 2005.

[3] The first was an involuntary commitment that occurred from April 21, 2005 to April 28, 2005. The second was a voluntary commitment from May 23, 2005, to May 26, 2005. **See** Amended Petition for Relied Pursuant to the Post Conviction Relief Act, 11/9/2015, at Appendix C1-13 and E1-11. The discharge of the later commitment was against medical advice and occurred within 24 hours of the assault.

[4] McCary raised one claim on direct appeal – that the evidence was insufficient to establish that he was perpetrator in question.

for allowance of appeal on May 14, 2012. *See Commonwealth v. McCary*, 38 A.3d 927, 837 WDA 2009 (Pa. Super., filed Nov. 21, 2011) (unpublished memorandum), *appeal denied*, 44 A.3d 1161 (Pa. 2012).

McCary filed this, his first, *pro se*, PCRA petition on July 24, 2012. Counsel was subsequently appointed and filed an amended petition on November 9, 2015, alleging trial counsel was ineffective for failing to investigate McCary's psychiatric history, procure copies of his medical records, obtain an opinion from an expert in the field, and request a competency hearing.[5] The Commonwealth filed a response to the petition on June 3, 2016, requesting an independent mental health evaluation. The court granted the Commonwealth's request, and McCary underwent a forensic psychological evaluation by Bruce A. Wright, M.D.

The PCRA court held a two-day evidentiary hearing beginning on December 11, 2018. Both Doctors Applegate and Wright as well as trial counsel testified at the hearing. Two days later, the court denied McCary's petition. This timely appeal followed.

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Presley*,

---

[5] McCary attached an affidavit from Alice A. Applegate, Ph.D., a psychologist, who opined that McCary exhibited a diminished capacity at the time of the offense. *See* Amended Petition for Relief Pursuant to the Post-Conviction Relief Act, 11/9/2015, at Affidavit of Dr. Alice A. Applegate, 10/8/2015.

193 A.3d 436, 442 (Pa. Super. 2018) (citation omitted). In doing so, we read the record in the light most favorable to the prevailing party. **See Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012). If this review reveals support for the PCRA court's credibility determinations and other factual findings, we may not disturb them. **See Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014). We, however, afford no deference to the PCRA court's legal conclusions. **See id.**

McCary's sole argument on appeal is that trial counsel was ineffective by failing to investigate his psychiatric history, procure copies of his medical records, obtain an opinion from an expert in the field of forensic psychiatry, and present a diminished capacity defense at trial. **See** Appellant's Brief at 10. First, McCary contends the record on appeal does not support the PCRA court's factual findings and conclusions of law. McCary states that because trial counsel did not have his medical records, counsel was not able to fully explain the charges pending against him, and could not provide him with the necessary information and advice so he could make an informed decision regarding possible strategies and outcomes. **Id.** at 12. Moreover, McCary alleges:

> Since trial counsel did not receive the records until the day before the trial concluded on January 20th, he could not, as he testified, be "sure" he "would have read through" all these records and then discussed with [McCary] how they could impact their strategy because once trial counsel proceeded to trial without these records, the evidence of [McCary]'s commitments to WPIC could no longer be used to support and present a diminished capacity defense.

- 4 -

*Id.* at 13 (citations omitted). Additionally, he asserts that even though counsel testified McCary did not want to admit culpability, "this issue becomes moot because … trial counsel made an intervening decision to proceed to trial before receiving, reviewing, and having an expert review, evaluate, and render an opinion." *Id.*

Next, McCary complains counsel's performance constituted structural error, in which counsel's error "occurred prior to trial and affected the complete framework of the trial." *Id.* at 14. Moreover, he states counsel "failed to protect [McCary]'s interests by ignoring the fact that he had not yet received [the medical records], by not requesting a continuance, and by intentionally proceeding to trial without them, thereby forever precluding [McCary] from asserting a diminished capacity defense." *Id.* at 16-17.

Third, McCary argues counsel's alleged ineffectiveness constituted prejudice *per se* "because of the severity of trial counsel's deficient performance resulted in a violation" of his constitutional right to present a defense, and therefore, prejudice must be presumed. *Id.* at 17. He maintains the decision to proceed to trial before receiving the psychiatric records did not constitute an informed decision. *Id.* at 19. Further, he states:

> [E]ven though trial counsel testified that [McCary] did not want to admit culpability and the strategy at trial was "to discredit the Commonwealth's version of events[,"] this issue becomes moot because trial counsel made an intervening uninformed decision to proceed to trial before receiving, reviewing, and having an expert review and evaluate [McCary] to determine if he suffered a diminished capacity at the time of the homicide. Without records

> of [McCary]'s psychiatric history, trial counsel could have no idea of their content or the impact they could have at trial. And, without these records, trial counsel would not be able to discuss with [McCary], or provide him with a realistic assessment of, the impact the records would or could have on their trial strategy.

*Id.* at 20 (citations omitted).

All of McCary's arguments are premised upon a theory that trial counsel was ineffective. We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. *See Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017). "In order for [an a]ppellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Presley*, 193 A.3d at 442 (citation omitted).

To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced him. *See Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011).[6] Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. *See Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004). "Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit

---

[6] *See also* 42 Pa.C.S.A. § 9543(a)(2)(ii).

is a legal determination." ***Commonwealth v. Barnett***, 121 A.3d 534, 540 (Pa. Super. 2015) (citations and internal quotation marks omitted). "A defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." ***Commonwealth v. Spotz***, 84 A.3d 294, 315 (Pa. 2014) (citation omitted).

Moreover, "[c]ounsel's strategic decision to seek acquittal rather than pursue a diminished capacity defense does not constitute ineffective assistance if there is a reasonable basis for the strategy chosen." ***Commonwealth v. Spotz***, 896 A.2d 1191, 1218 (Pa. 2006), (citation omitted). "Diminished capacity is an extremely limited defense, which requires extensive psychiatric testimony establishing a defendant suffered from one or more mental disorders which prevented him from formulating the specific intent to kill." ***Commonwealth v. Cuevas***, 832 A.2d 388, 393 (Pa. 2003) (citation omitted).

> Because the defense is directed exclusively at the negation of specific intent, for evidence to be admissible it must necessarily put into question the criminal defendant's very ability to form the intent to kill. Thus, "[e]vidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense. Furthermore, diagnosis with a personality disorder does not suffice to establish diminished capacity." Additionally, the evidence must provide insight as to the defendant's mental state at the time of the offense, "the only relevant time for a diminished capacity defense." ***Commonwealth v. Spotz***, 610 Pa. 17, 144, 18 A.3d 244, 319

(2011) (citing ***Commonwealth v. Rainey***, 593 Pa. 67, 928 A.2d 215, 237 (2007) (requiring a defendant advancing a defense of diminished capacity based on mental defect to "establish [that he or she] had a mental defect at the time of [the] murder that affected his [or her] cognitive abilities of deliberation and premeditation necessary to formulate specific intent to kill.")).

***Commonwealth v. Mason***, 130 A.3d 601, 631 (Pa. 2015) (some citations omitted). Furthermore, the mere fact that a chosen trial strategy ultimately proved unsuccessful does not render it unreasonable. ***See Spotz***, 896 A.2d at 1235.

Here, the PCRA court found the following:

> While there is no dispute between the parties as to the fact that McCary has a long history of psychiatric issues, the question of competency for trial was not presented by his counsel because his counsel believed that McCary was competent and was cooperative with him in the preparation of his case and the potential defenses that might be available to him. McCary's counsel, Owen Seman, testified that he reviewed the charge of criminal homicide with McCary and explained the various degrees of the charge of criminal homicide and their respective penalties. Seman testified that McCary understood the explanation as to the gradation of the charge of criminal homicide and was insistent that he proceed to trial because he did not commit the homicide. McCary believed that he was misidentified and that he would be vindicated in a trial. McCary repeatedly told Seman that he did not commit this homicide. When Seman became aware of the fact that McCary had been committed by his sister to Western Psychiatric Institute and Clinic (hereinafter "WPIC"), he requested those records to have an opportunity to review them in light of the plan that he and McCary had agreed upon. In reviewing those records, he noted McCary was admitted because he had become aggressive toward his relatives and threatened to harm himself. Although McCary left WPIC against medical advice, there was no notation in the records that he was incompetent. As noted by Dr. Wright, had the examining physicians believed that McCary was incompetent to make this decision, they could have involuntarily committed him.

In **Commonwealth v. Blakeney**, 108 A.3d 739, 752 (Pa. Super. 2014), the Pennsylvania Supreme Court set forth the standard that it used to make a determination as to whether or not an individual is incompetent:

> A defendant is presumed to be competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is incompetent to do so. [**Commonwealth v.**] **Brown**, 872 A.2d [1139, 1156 (Pa. 2005)]. This Court has recognized that the competency standard for waiving the right to counsel is the same as, and not higher than, the competency standard for standing trial. **Spotz**, 18 A.3d at 266. If a court finds a defendant incompetent to waive the right to counsel, then the court must also conclude that the defendant is incompetent to stand trial. **Id.** Competency to stand trial is measured by the relationship between counsel and client: To be deemed competent, the defendant needs to have the ability to consult with counsel with a reasonable degree of understanding, in order to participate in his defense, and he must be able to understand the nature or object of the proceedings against him. **See Commonwealth v. Flor**, 606 Pa. 384, 998 A.2d 606, 617-18 (2010). The focus is properly on the defendant's mental capacity, *i.e.*, whether he has the ability to understand the proceedings. **Spotz**, 18 A.3d at 266.

Seman's testimony was that McCary had the ability to consult with him with a reasonable degree of understanding of the charges filed against him and he participated in formulating his defense and he understood the nature and object of these particular proceedings. As Seman testified, he fully explained to McCary the charge of criminal homicide and the various possible results and their penalties. Seman also testified that he suggested to McCary that the charge of voluntary manslaughter might be appropriate if he would acknowledge that he was responsible for the death of the victim, however, McCary was adamant about the fact that he did not commit this homicide. In light of McCary's position that he was not the murderer, Seman was left with the defense upon which they both agreed, that being, that McCary was being misidentified as that individual.

Further acknowledging McCary's understanding of the proceedings was his testimony at the time of the **Grazier** hearing.

McCary advised this Court that he wanted new counsel because he did not know enough about the law to adequately represent himself and that he wanted a court-appointed lawyer. He believed that Mr. Seman was "a hell of a lawyer and a hell of a guy", however, he was busy and he wanted someone else to handle his appeal. He was cognizant of the fact that if his issues were not set forth in the concise statement of matters complained of on appeal that they would be waived. Seman further testified that in hindsight he reviewed the fact that McCary had some psychiatric issues and it might have been helpful in formulating a defense to the charge of criminal homicide, however, it would have been of no benefit to him in light of McCary's insistence that he did not commit this homicide. Based upon all of the information that he knew at that time and McCary's insistence that he was not the murderer, he followed the course of action that both he and McCary had agreed upon.

At the time of the hearing on McCary's petition for post-conviction relief, both Alice Applegate, Ph.D. and Bruce Wright, M.D., testified as to their views as to McCary's competency at the time of his trial and at the time of his hearing on his petition for post-conviction relief. In addition to having their testimony, this Court also had the benefit of Dr. Applegate's [55]-page report and Dr. Wright's [21]-page report. Both Dr. Applegate and Dr. Wright were questioned as to whether or not McCary was competent to engage in the hearing on the petition for post-conviction relief prior to any discussion taking place as to his competency to proceed to trial in 2009. Dr. Applegate maintained that based upon her testing of McCary and her interaction with him, that he was incompetent not only for the post-conviction proceeding but, also, for trial. Dr. Wright on the other hand, maintained that McCary was competent and as observed by other professionals he was manipulative in how he handled certain things, including as to whether or not he could proceed with his case. It was Dr. Applegate's opinion that McCary was not competent to participate in his ongoing legal defense despite his positive working relationship with his current lawyer. Dr. Wright was of the opinion that McCary has a history of manipulative behavior and demonstrated that manipulative behavior when he engaged in a deliberate attempt to appear more impaired than he was. Dr. Wright reviewed Dr. Applegate's report and her testing and indicated that although he would agree with Dr. Applegate if that were the only records upon which he had to rely, the other psychiatric records including his progress reports at SCI Rockford,

told him that McCary was competent and understood the legal process and was able to assist his counsel in preparing for trial.

When Dr. Wright was asked about whether or not McCary was competent to stand trial in 2009, he disagreed with Dr. Applegate who maintained that he was not and Dr. Wright suggested that McCary's manipulative behavior to him in submitting a third personality disorder, whereas his responses to the questions that were asked by this Court in his waiver of a right to a jury trial and his responses after he was found guilty indicate that he was fully aware of the nature of the proceeding in which he was involved and that his inquiries were appropriate and insightful for his particular position.

In reviewing the voluminous testimony presented by both Dr. Applegate and Dr. Wright, and their reports, together with the other medical records that were submitted, it was clear that McCary was fully aware of the nature of the proceeding in which he was involved and could clearly and adequately communicate with his counsel and assist his counsel in the trial of his case. His counsel advised him of the nature of the charge, advised him of the possible penalties with respect to each level of the charge of criminal homicide, and formulated a defense with McCary based upon his vehement assertion that he did not commit his homicide. A review of the record in this case clearly demonstrates that there was no need for a competency hearing to be held prior to the time of McCary's trial because he was fully able to understand the proceedings and assist his counsel in the handling of those proceedings.

The second claim of ineffectiveness is predicated upon Seman's failure to interpose diminished capacity testimony. The defendant did not testify at the time of trial nor did he call any witnesses. In order for him to avail himself of the diminished capacity defense, he had to acknowledge the fact that he was responsible for the death of his victim. In **_Commonwealth v._ _Hutchinson_**, 25 A.3d 277, 312 (Pa. 2011), the Pennsylvania Supreme Court acknowledged when the defense of diminished capacity would be available to a defendant.

> A defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability

based upon an inability to formulate the specific intent to kill. ***Commonwealth v. C. Williams***, 602 Pa. 360, 980 A.2d 510, 527 (2009); [***C***]***ommonwealth v.*** [***G***]***ibson***, 597 PA. 402, 951 [**A**].2d 1110, 1131 (2008); ***Commonwealth v. Spotz***, 587 Pa. 1, 896 A.2d 1191, 1218 (2006) ("Absent an admission from [the defendant] that he had shot and killed [the victim], trial counsel could not have presented a diminished capacity defense.")[.] If a defendant does not admit that he killed the victim, but rather advances an innocence defense, then evidence on diminished capacity is inadmissible. ***Commonwealth v. Laird***, 605 Pa. 137, 988 A.2d 618, 632 (2010).

The import of the defense of diminished capacity is that evidence of someone's diminished capacity will entitle a fact-finder to come to the conclusion that the individual lacked the specific intent to kill somebody thereby negating the imposition of a first-degree murder verdict. When an individual maintains that he did not commit the crime, there is no ability to interpose the defense of diminished capacity.

McCary's defense was that he did not commit the homicide and, accordingly, evidence of diminished capacity was irrelevant and inadmissible in this trial and his counsel could not have been ineffective for failing to introduce that inadmissible evidence.

PCRA Court Opinion, 4/18/2018, at 7-12. We conclude that the trial court's opinion properly disposes of the issue in this case. Accordingly, we affirm on the basis of that opinion, while adding the following comments.

The December 2018 PCRA hearing included a battle of expert witnesses, with the experts presenting conflicting opinions on whether McCary was competent at the time of his trial. The Honorable David R. Cashman gave greater weight to Dr. Wright, the Commonwealth's expert witness, particularly to the expert's testimony that McCary was competent at the time of trial and exhibited manipulative behavior with respect to the progression of his case.

*Id.* at 10.[7] Judge Cashman, sitting as fact-finder, was free to do so, and we are bound by this determination. *See Commonwealth v. Puksar*, 951 A.2d 267, 276 (Pa. 2008) ("The expert testimony offered at trial by both sides amounted to a battle of the experts, with the [fact-finder] as the ultimate referee based upon its assessment of the credibility of the experts").

Second, the court found trial counsel's testimony credible, and that he demonstrated reasonable trial strategy in pursuing an acquittal. *See Spotz*, 896 A.2d at 1218. Trial counsel testified: (1) he met with McCary at least six times; (2) he relied upon McCary's steadfastness on not being the perpetrator and McCary's unwillingness to pursue other trial strategies like voluntary manslaughter; (3) he was not told until later on that McCary had been committed WPIC; and (4) he got along well with McCary, McCary participated in his defense, and nothing jumped out about McCary that gave him pause.[8]

---

[7] It also merits mention that Dr. Applegate did not opine that McCary lacked the ability to form the specific intent to kill in her 2015 and 2018 reports regarding McCary, but did testify to that for the first time at the PCRA hearing. *See* N.T., 12/11/2018-12/12/2018, at 166-167.

[8] When asked what prompted counsel to request the medical record, he stated:

> I'm not sure, to be perfectly honest, as I think back on it. I don't know if Mr. McCary made a mention to me that right before this -- because had I known that these records existed, I would have asked for them a while before. But when I requested these, I remember something came up that -- I don't know if it was in conversation that me and Mr. McCary talked about it, and he said, oh, I had just been released from Western Psych, something along

*See* N.T., 12/11/2018-12/12/2018, at 217, 220-221, and 225-226. Accordingly, we conclude the PCRA court's determinations are supported by the evidence of the record, and affirm the court's determination that McCary did not meet his burden in demonstrating trial counsel's ineffectiveness in failing to investigate his psychiatric history and pursue a diminished capacity defense.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2020

---

those lines, and I made the request to see if that was accurate, and it turns out it was.

N.T., 12/11/2018-12/12/2018, at 221.